In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-02-091 CR


____________________



ELBERT BLAKE, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 159th District Court


Angelina County, Texas


Trial Cause No. 22,342






OPINION


 A jury convicted Elbert Blake (appellant) of the offense of possession of a Penalty
Group I controlled substance in an amount of one gram or more but less than four grams,
a third degree felony. See Tex. Health & Safety Code Ann. §§ 481.102(6) &
481.115(a) & (c) (Vernon Supp. 2002). An allegation that appellant had previously been
convicted of a like offense in 1999 in Polk County raised appellant's punishment exposure
to that of a second degree felony. Tex. Pen. Code Ann. § 12.42(a)(3) (Vernon Supp.
2002). Nevertheless, the trial court assessed punishment at ten years' confinement in the
Institutional Division of the Texas Department of Criminal Justice but suspended
imposition of said sentence for a period of ten years. No fine was added to appellant's
sentence. Appellant's four points of error center around the single issue of whether the
trial court abused its discretion in failing to suppress evidence of appellant's possession of
the contraband in question because of an illegal search. (1) 

 The record before us indicates that the trial court conducted a hearing prior to trial
on the suppression issue and overruled appellant's motion at that time. However, the trial
court expressly reserved the right to reconsider its ruling after hearing evidence presented
at the trial on the merits. The central question both parties and the trial court were
attempting to resolve centered upon a third party's "authority" to "consent to search" what
all participants appeared to concede was a motel room rented by appellant. (2) 

 Consent to search is one of the well-established exceptions to the constitutional
requirements of both probable cause and a warrant. See Schneckloth v. Bustamonte, 412
U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Carmouche v. State, 10 S.W.3d
323, 331 (Tex. Crim. App. 2000). The validity of an alleged consent to search is a
question of fact to be determined from all the circumstances. See Ohio v. Robinette, 519
U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); Allridge v. State, 850 S.W.2d 471,
493 (Tex. Crim. App. 1991). The federal constitution requires the State to prove the
validity of the consent by a preponderance of the evidence; the Texas Constitution requires
the State to show by clear and convincing evidence that the consent was valid. 
Carmouche, 10 S.W.3d at 331. We will, therefore, review the evidence under the more
protective Texas Standard. See Johnson v. State, 68 S.W.3d 644, 652 n. 30 (Tex. Crim.
App. 2002).

 We note at the outset that although appellant's complaints on appeal embrace both
the Texas Constitution and the Fourth Amendment of the United States Constitution, he
has failed to provide any substantive analysis and argument in separate grounds with regard
to the Texas Constitution. Briefs asserting rights under the Texas Constitution are
inadequate if they fail to provide separate argument and authority in support of the
assertion. Lacour v. State, 21 S.W.3d 794, 795 (Tex. App.--Beaumont 2000, no pet.)
(citing Heitman v. State, 815 S.W.2d 681, 690 n. 23 (Tex. Crim. App. 1991)). We,
therefore, narrow our scrutiny to the Fourth Amendment argument and authorities. A
third party may properly consent to a search when he or she has common authority over
or other sufficient relationship to the premises or effects sought to be searched. United
States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). (3) The United
States Supreme Court has explained, and the Court of Criminal Appeals has agreed, that
the concept of "common authority" is not to be implied merely from the existence of a
property interest that a third party may have in the property being searched. (4) Matlock, 415
U.S. at 171 n. 7; Boyle v. State, 820 S.W.2d 122, 142 (Tex. Crim. App. 1989) (opinion
on rehearing), disapproved on other grounds by Gordon v. State, 801 S.W.2d 899, 911
n. 13 (Tex. Crim. App. 1990). Nor is a legal property interest dispositive in determining
whether a third party has the authority to consent to a search; common authority derives
from the mutual use of the property, not the ownership or lack thereof. Id. It is this
mutual use that leads to a finding that a third party has the right to permit the inspection
of the relevant property and that others with an equal or greater interest in the property
have assumed the risk that, through the grant of permission to use, the third party might
permit the property to be searched. Id.; See also Frazier v. Cupp, 394 U.S. 731, 740, 89
S.Ct. 1420, 22 L.Ed.2d 684 (1969). 

 The Matlock Court addressed the specific issue of whether the third party in
question, Mrs. Graff, did or did not have actual authority to consent to the search of the
house and bedroom also occupied by Matlock. Expressly reserved in Matlock, and
subsequently answered in Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111
L.Ed.2d 148 (1990), was the question of the legality of a warrantless entry based upon the
consent of a third party whom the police, at the time of entry, reasonably believed
possessed common authority over the premises, but who in fact did not possess such
authority. Matlock, 415 U.S. at 177 n. 14. It is the law of Illinois v. Rodriguez, along
with certain instructive holdings in Matlock, that is the applicable law to be applied to the
facts of the instant case. 

 At a suppression hearing, the trial judge is the sole and exclusive trier of fact and
judge of the credibility of the witnesses and their testimony. Allridge, 850 S.W.2d at 492. 
The appropriate standard for reviewing a trial court's ruling on a motion to suppress is a
bifurcated standard of review, giving almost total deference to a trial court's determination
of historical facts and reviewing de novo the court's application of the law. Carmouche,
10 S.W.3d at 327 (citing Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim. App.
1997)). In the instant case, the trial court did not make explicit findings of fact, so we
will, therefore, review the evidence in a light most favorable to the trial court's ruling. 
See State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

 In the instant case, it is undisputed that the third party, Ms. Milette Luce, was alone
in the motel room when the law enforcement officers knocked on the door. Prior
testimony indicated that the officers were part of a drug interdiction unit on a routine
assignment making rounds of local motels and hotels in hopes of turning up clandestine
methamphetamine labs. At the motel in question, one of the officers spotted appellant's, 
or Ms. Luce's name on the motel registry. One of the officers had previously received
information that appellant was involved in "illegal activity," so the three officers
proceeded to the room in an attempt to make contact with appellant, speak to him, and
generally "just see what's going on." If it had been determined that no illegal activity was 
occurring, the officers would have left. 

 Examining the testimony in the light most favorable to the trial court's ruling, it
appears that Ms. Luce invited the officers into the motel room upon recognizing one of the
officers. The officers then asked Ms. Luce if they could search the room and she
consented. One officer testified that he observed "bags" or "luggage" in the room
belonging to Ms. Luce. A search of this "luggage" turned up clothes. Another officer
recalled seeing female clothing in a black duffle bag he searched as well as seeing clothing
scattered around the room. This officer also remembered Ms. Luce as identifying the
clothing as belonging to her. To this officer, it appeared that Ms. Luce was staying in the
room overnight. Ms. Luce herself admitted that she had an overnight case and a
Walgreen's bag with some items inside. Upon further inquiry by trial counsel, Ms. Luce
specifically recalled carrying her makeup case and possibly "a bag or two" with clothes
inside. 

 It was during the search of the room that appellant placed a telephone call to the
room and spoke to Ms. Luce. One of the officer's asked Ms. Luce to hold the telephone
receiver where he could hear the caller, and Ms. Luce complied. During the course of the
telephone conversation, appellant told Ms. Luce that she had nothing to worry about
because he [appellant] had "the dope" with him. At the conclusion of the telephone
conversation, one of the officers was provided a description of the vehicle appellant was
driving and he informed the local police department in an effort to locate said vehicle. It
was during the course of the subsequent stop and search of appellant's vehicle that the
contraband used in the instant prosecution was discovered. 

 Appellant appears to recognize the subtle but highly significant distinction between
the holdings announced in Matlock and Rodriguez. However, appellant's argument runs
afoul of the standard of appellate review under which reviewing courts must operate, viz:
We review the historical facts under the light most favorable to the trial court's ruling. 
Ballard, 987 S.W.2d at 891. Under this standard, we must disregard testimony from Ms.
Luce, from Jennifer McMullen, or from any source, contradicting or calling into question
any record evidence that permitted any of the officers to reasonably believe that Ms. Luce
had common authority to consent to a search of the motel room, even if the contradicting
testimony described events or circumstances that were later found to be factually correct. 
As the Rodriguez Court explained:

 It is apparent that in order to satisfy the "reasonableness" requirement of
the Fourth Amendment, what is generally demanded of the many factual
determinations that must regularly be made by agents of the government - -
whether the magistrate issuing a warrant, the police officer executing a
warrant, or the police officer conducting a search or seizure under one of the
exceptions to the warrant requirement - - is not that they always be correct,
but that they always be reasonable. 


 . . . .


 We see no reason to depart from this general rule with respect to facts
bearing upon the authority to consent to a search. Whether the basis for
such authority exists is the sort of recurring factual question to which law
enforcement officials must be expected to apply their judgment; and all the
Fourth Amendment requires is that they answer it reasonably. The
Constitution is no more violated when officers enter without a warrant
because they reasonably (though erroneously) believe that the person who
has consented to their entry is a resident of the premises, than it is violated
when they enter without a warrant because they reasonably (though
erroneously) believe they are in pursuit of a violent felon who is about to
escape.


Rodriguez, 497 U.S. at 185-86. The Court then announced the standard "objective" test
as follows:

 As with other factual determinations bearing upon search and seizure,
determination of consent to enter must "be judged against an objective
standard: would the facts available to the officer at the moment . . . 'warrant
a man of reasonable caution in the belief'" that the consenting party had
authority over the premises? Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct.
1868, 20 L.Ed.2d 889 (1968). If not, then warrantless entry without further
inquiry is unlawful unless authority actually exists. But if so, the search is
valid. 


Id. at 188-89.

 A major attack on the lack of evidence of Ms. Luce's apparent authority by
appellant was by reference to portions of the officers' testimony indicating that because
Ms. Luce answered the door she had authority to consent to the search. Yet this was only
one of the objective facts presented to the officers when Ms. Luce opened the door to the
room. As noted from the testimony set out above, Ms. Luce was also alone; there was
luggage present; the luggage contained women's clothing; Ms. Luce admitted to owning
some of the clothing; Ms. Luce testified her makeup case and clothing were in the room;
and her name may have appeared on the hotel register. We reiterate that evidence of
"ownership" or a greater interest in the place or property searched is not the key factor
here. See Matlock, 415 U.S. at 171 n. 7. By leaving Ms. Luce alone in the room
appellant assumed the risk that, in granting her such permission to use the room, she would
permit the room to be searched. 

 Based upon the clear and convincing evidence contained in the record before us, the
trial court could have found that the facts available to the officers when they initially
encountered Ms. Luce were such as to warrant a man or woman of reasonable caution in
the belief that Ms. Luce had common authority over the motel room and, therefore, could
consent to its search. As such, the trial court did not abuse its discretion in denying
appellant's motion to suppress. We overrule appellant's four points of error and affirm
the judgment and the sentence of the trial court.

 AFFIRMED. 




 _____________________________

 RONALD L. WALKER

 Chief Justice


Submitted on August 23, 2002

Opinion Delivered October 16, 2002

Do Not Publish


Before Walker, C.J., Burgess and Gaultney, JJ.



CONCURRING OPINION


 I concur in the result. Blake's complaints about the search of the motel room
completely miss the point. Consequently, the majority's discussion, while enlightening and
correct, does also. As the majority notes, Blake makes no complaint about the controlled
substance found in his car. One of the officers testified methamphetamine was found on
the front seat of Blake's vehicle, sitting next to him. The officer also testified more
methamphetamine was found in the vehicle than in the room. Thus, the search of the room
and the contraband found there is inconsequential. 




 DON BURGESS

 Justice


Opinion Delivered

October 16, 2002

Do Not Publish
1. The record before us indicates that no actual controlled substance was introduced
into evidence during trial. A conviction for possession of controlled substance can,
nevertheless, be sustained where a proper chain of custody is proven and there is no
question of bad faith on the part of the State. See Lake v. State, 577 S.W.2d 245 (Tex.
Crim. App. 1979). Appellant in the instant case does not complain that the failure of the
State to introduce the actual contraband seized from appellant's vehicle resulted in legally
insufficient evidence to sustain his conviction. As such, we have no need to consider the
situation further. 
2. We are not entirely convinced that the record evidence is so settled on this "fact"
as there is testimony indicating that the third party, Ms. Luce, was the registered guest to
the room in question. As we are required to give almost total deference to the historical
facts as determined by the trial court, we will presume that it was appellant who was the
registered, paying guest of the room in question.
3. We rely on Matlock as authority solely for the Fourth Amendment issue.
4. For example, a landlord usually cannot validly consent to the search of a house that
he has rented to another. See Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5
L.Ed.2d 828 (1961). Also, it has been held that a hotel clerk cannot validly consent to the
search of a room that has been rented to a customer. See Stoner v. California, 376 U.S.
483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).