

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00067-CR

CHRISTOPHER DAYSHON CASTANEDA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 29416

Before Stevens, C.J., van Cleef and Morriss,* JJ.
Memorandum Opinion by Justice van Cleef

*Josh R. Morriss, III, Chief Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

After a jury found Christopher Dayshon Castaneda guilty of manufacture or delivery of a controlled substance, more than four but less than 200 grams, and evading arrest/detention with a prior conviction, the trial court assessed punishment of thirty years' and ten years' confinement in prison, respectively. Those sentences were ordered to run concurrently. Castaneda appeals, arguing that (1) the trial court erred when it denied his motion to suppress, (2) there was insufficient evidence to prove beyond a reasonable doubt that Castaneda possessed methamphetamine, and (3) there was insufficient evidence to prove beyond a reasonable doubt that Castaneda intended to distribute methamphetamine. For the reasons below, we affirm the trial court's judgment.

## I.      Castaneda Waived His Complaint Regarding the Trial Court's Denial of His Motion to Suppress

Before the commencement of trial, Castaneda filed a motion to suppress relating to evidence that had been seized during what Castaneda maintained was an illegal search and seizure. The trial court carried the motion with the case, denying it following the completion of the trial.[1] Castaneda contends that, at trial, police officers testified in regard to two separate search warrants that gave them access to his house at 2116 Maple. When police arrived to execute the first warrant, Castaneda ran from the house and was apprehended in a nearby RV park. At that time, officers saw paraphernalia, so they obtained a second warrant to search the house. During the final search, officers found in some luggage the methamphetamine that is the

---

[1]The record before us does not disclose any hearing on the motion to suppress or any objection to carrying the motion with the case.

subject of this case. On appeal, Castaneda complains that neither of those search warrants are contained in the record. Consequently, according to Castaneda, he "met his burden of establishing evidence was seized, but the State failed to establish that the evidence was legally seized pursuant to a valid search warrant" due to its failure to include the search warrants in the record.

In support of his argument that the State had the duty to ensure that the warrant was included in the record, Castaneda directs us to *Handy v. State*, 189 S.W.3d 296 (Tex. Crim. App. 2006), and relies on the following portions of the court's opinion:

> We have held that "[w]hen a defendant objects to the [trial] court admitting evidence on the ground that it was unlawfully seized and the State relies on a search warrant, in the absence of a waiver, reversible error will result unless the record reflects that the warrant was exhibited to the trial judge." *Cannady v. State*, 582 S.W.2d 467, 469 (Tex. Crim. App. 1979). *See also Miller v. State*, 736 S.W.2d 643, 648 (Tex. Crim. App. 1987) (rule also applies to affidavit supporting warrant). As Professors Dix and Dawson have explained, the rationale for this rule
>
>> "rests on the assumption that the State has more ready access to the documents at issue and thus can most easily comply with a requirement for production. When the existence or terms of those documents becomes crucial to the hearing, then the State is more fairly given the obligation of making them available. This permits the court to test the reasonableness of the State's reliance upon them and facilitates any attack upon their sufficiency the defendant may wish to mount."
>
> G. Dix & R. Dawson, 42 Tex. Prac., Criminal Practice and Procedure § 29.111 (2d ed. 2001). Furthermore,
>
>> "[t]he basis for and formulation of the rule suggests that the State's duty [to exhibit the warrant and its supporting affidavit] does not arise until . . . the defendant fulfills his initial burden of producing evidence and convincing the court that the evidence at issue was obtained by a search or seizure, *that he has standing to contest that*

3

> *action, and that the police action was without a warrant or was otherwise on its face unreasonable.* Only when the analysis progresses to the warrant and supporting affidavit should the State have the duty of producing those documents."

*Id.* at § 29.112 (2d ed. 2001) (emphasis added).

*Handy*, 189 S.W.3d at 298–99.

> However, *Handy* also states,
>
> In the instant case, appellant never established his standing to challenge the search in question, *i.e.*, he never established that he personally had a reasonable expectation of privacy in the premises that were searched. *See Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004). . . . Although appellant asserted in his boilerplate motion to suppress that his residence was the place searched, he presented no proof of such claim to the trial court. In addition, appellant never established that the search in question was on its face unreasonable. Under these circumstances, the State had no duty to exhibit the search warrant and its supporting affidavit to the trial court.

*Id.* at 299 (footnote omitted).

Castaneda's motion asked the court (1) to conduct a hearing to determine the admissibility of *any evidence recovered* during the investigation of this case, (2) to rule, after such hearing, that *the evidence* was recovered as a result of an illegal search and seizure, and (3) to find that *the evidence* was inadmissible.

On appeal, Castaneda claims that, because his motion to suppress sufficiently challenged the legality of the drugs found in his house at 2116 Maple, the burden shifted to the State. Yet, Castaneda's motion failed to identify any particular location that he believed had been illegally searched, failed to identify the particular property that he believed was illegally seized, and failed to establish that he had standing to complain of the alleged illegality of the search that took place

4

at 2116 Maple. "Under these circumstances, the State had no duty to exhibit the search warrant . . . to the trial court." *See id.*

Consequently, without more, Castaneda failed to demonstrate that any particular evidence, including the methamphetamine, was seized pursuant to an illegal search.

We overrule Castaneda's first point of error.

## II. Sufficient Evidence Supported the Jury's Verdict of Manufacture or Delivery of Methamphetamine

In his second and third points of error, Castaneda contends that there was insufficient evidence to show (1) his intent to possess methamphetamine and (2) his intent to deliver methamphetamine.

### A. Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

5

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

The jury, as "the sole judge of the credibility of the witnesses and the weight to be given their testimony[, could] 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" *Id.* at 297 (second alteration in original) (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). "We give 'almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)).

"[A] person commits an offense if [he] knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance," such as methamphetamine. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a); *see Talley v. State*, 909 S.W.2d 233, 234 (Tex. App.—Texarkana 1995, pet. ref'd). Here, the State's indictment against Castaneda alleged that, "on or about MAY 13, 2021, in Lamar County, Texas, . . . [Castaneda] did then and there knowingly possess, with intent to deliver, a controlled substance, namely Methamphetamine, in an amount of four grams or more but less than 200 grams."

6

**B.** **There Was Sufficient Evidence to Show Castaneda's Intent to Possess Methamphetamine**

In his second point of error, Castaneda contends that there was insufficient evidence to show that he possessed the methamphetamine because the State failed to admit the methamphetamine into evidence. Appellant cites *Lake v. State*, 577 S.W.2d 245, 246 (Tex. Crim. App. [Panel Op.] 1979), in support of this argument.

Lake argued that he could not be convicted of possession of heroin because the heroin was destroyed before trial. He had been tried previously on the same offense, but his conviction was set aside by the trial court. After the initial conviction, the heroin was destroyed by order of the trial court. *Id.* In affirming his second conviction, the Texas Court of Criminal Appeals stated, "It is true, as appellant argues, that a defendant should be given access to contraband for the purpose of analysis [w]hen available." *Id.* The court continued, "There are instances, however, when it is not available, such as when it is lost or is destroyed in the process of analysis. Under such circumstances it is not error to convict for possession of drugs absent the physical presence of the drug itself, providing the drug has been analyzed and the chain of custody explicated." *Id.*

Castaneda contends that the *Lake* exception is limited to instances where the drugs were not available at the time of trial and, according to Castaneda, that was not the case here. We disagree. In *Lake*, the court recognized that, pursuant to the particular facts before it, the drugs were not available to the defendant for purposes of his own analysis, nor were they admitted at trial. Yet, *despite* the unavailability at trial, not necessarily *because* of it, the court determined that it was not error to convict Lake for possession of heroin because (1) the heroin had been

7

analyzed, (2) the chain of custody had been established, and (3) there was no showing of bad faith on the part of the State in relation to the destruction of the drugs. *Id.*

In this case, Christopher Mayfield, a detective with the Paris Police Department (PPD), testified that, around May 13, he received information from "concerned citizens" that Castaneda may have been selling narcotics from a house he shared with his girlfriend at 2116 Maple. After obtaining a search warrant for the premises, officers discovered carry-on luggage containing black plastic tubes[2] that are commonly used in dispensaries to package marihuana, along with a plastic baggie containing forty-one multicolored pills. PPD officers testified that they believed the pills were "MDMA," which is short for methyl dioxide methamphetamine. Further, without objection, the trial court admitted a laboratory report prepared by the Texas Department of Public Safety (DPS). The report noted that twenty-two of the forty-one pills had been analyzed and that they contained methamphetamine, weighing 4.77 grams. Castaneda did not challenge the chain of custody, and there was no evidence that the drugs received by the DPS were not the drugs seized from Castaneda's residence. Moreover, Castaneda does not argue on appeal, and the record does not show, that the State acted in bad faith when it did not introduce the drugs at trial. Consequently, we find that there was sufficient evidence to support the jury's finding that Castaneda possessed methamphetamine.

We overrule Castaneda's second point of error.

---

[2]Mayfield described the tubes as being about three or four inches long and about an inch and one-half in diameter. The tubes were labeled "contains THC."

8

**C.** **There Was Sufficient Evidence to Show Castaneda's Intent to Deliver Methamphetamine**

In his third point of error, Castaneda maintains that the State did not offer any evidence of his intent to deliver the methamphetamine, beyond simple possession of it. According to Castaneda, the amount involved was consistent with personal use and did not, alone, support the jury's finding of his intent to deliver it.

The State has the burden of proving Castaneda's intent to deliver the methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112. Intent to deliver may be established by circumstantial evidence. *Williams v. State*, 902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). "Expert testimony by experienced law enforcement officers may be used to show intent to deliver." *Biggers v. State*, 634 S.W.3d 244, 253 (Tex. App.—Texarkana 2021, pet. ref'd) (quoting *Mack v. State*, 859 S.W.2d 526, 529 (Tex. App.—Houston [1st Dist.] 1993, no pet.)). In a possession with intent to deliver case, the "intent to deliver" element may be proved by circumstantial evidence, such as the quantity of drugs possessed, the manner of packaging, and presence of drug paraphernalia. *Williams*, 902 S.W.2d at 507. "The number of factors present is not as important as the logical force the factors have in establishing the elements of the offense." *Biggers*, 634 S.W.3d at 253 (quoting *Gilbert v. State*, 874 S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd)). "Even so, more facts than mere presence near the drugs [are] required, particularly when there are many people present or in possession of the premises." *Id.* (citing *Estrada v. State*, 643 S.W.2d 753, 756 (Tex. App.—San Antonio 1982, no pet.)).

In this case, Mayfield testified that officers located forty-one pills, which were later identified as being 4.77 grams methamphetamine. Small black tubes commonly used to package drugs were also found.

PPD Sergeant Leigh Foreman testified as an expert on narcotics. According to Foreman, drugs, such as the methamphetamine pills found in Castaneda's house, are usually sold as an individual unit or dose, with a price per pill. When asked how many pills a user would have in his or her possession, Foreman stated, "If you wanted to err on the side of caution you could say maybe four or so. But generally for people using it[,] it's one or two tablets." She then went on to explain, "Forty-one dosage units is incredibly high. Then if you start breaking them down into half tablets.[3] So, what this indicates to me, based on what I know, is that he possessed this with intent to deliver."

"The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999) (citing *Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984)). When faced with conflicting inferences, we "must presume that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Based on the foregoing, we find that the evidence was sufficient to support the jury's determination that Castaneda possessed methamphetamine with the intent to deliver it.

We overrule Castaneda's third point of error.

---

[3]Foreman also testified that, depending on a person's tolerance to methamphetamine, it is not uncommon for drug users to half the dosage by cutting a pill into halves.

10

### III. Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted: December 13, 2022
Date Decided: January 9, 2023

Do Not Publish